JS 44  (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Jessica Pugh

**DEFENDANTS**
Montgomery County et al

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael A. Walker, Esq.
The Walker Firm, 516 Dekalb Street Norristown PA

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*   *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 367 Health Care/ | | | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' / Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 340 Marine | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 345 Marine Product Liability / **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | | | |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal / [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | Injury / [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| | [ ] 362 Personal Injury - Medical Malpractice | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | |
| | | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [x] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** | **IMMIGRATION** | | |
| | [ ] 448 Education / [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | / [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | / [ ] 555 Prison Condition | | | |
| | / [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
US 42 1983, 1985, 1988

Brief description of cause:
Wrongful Arrest

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____     DOCKET NUMBER _____

DATE
7/23/26

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

10/2024

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Montgomery County, Pennsylvania

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?     Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?     Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?     Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?     Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.     Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☐ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief ***see certification below***
☐ 16. All Other Federal Question Cases. *(Please specify):*_____

*B.* ***Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____
_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☐ **does not** have implications beyond the parties before the court and ☐ **does** / ☐ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☑ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————

JESSICA PUGH,
63 Continental Way
Bridgeport, PA 19405
       Plaintiff,

              :     JURY TRIAL DEMANDED

v.                  :     CIVIL ACTION NO. *2:26-cv-5142*

SOLICITOR
MONTGOMERY COUNTY, PA           :
P.O. Box 311
Norristown, PA 19404-0311       :

DETECTIVE MICHAEL LAVERTY,
Individually and in his official capacity as
A Detective with the Upper Merion Township
Police Department
175 W Valley Forge Road
King of Prussia, PA 19406

DETECTIVE MICHAEL LAVERTY,
As a member of the Montgomery County
Detective Bureau;                 :
2 East Airy Street
Suite 502
Norristown, PA 19401

TROOPER RYAN TIERNEY
PA State Police
TROOP K - PHILADELPHIA
2201 Belmont Avenue
Philadelphia, PA 19131          :

LIBBY HEMLER, Assistant District Attorney of
The MONTGOMERY COUNTY DISTRICT    :
ATTORNEY'S OFFICE, Individually and in her official
capacity as Assistant District Attorney of
Montgomery County             :
District Attorney's Office
County Courthouse
4th Floor                   :
P.O. Box 311
Norristown, PA 19404-0311       :

       Defendants            :

1

COMPLAINT

NOW COMES, the Plaintiff, Jessica Pugh, by and through her counsel, Michael A. Walker, Esquire, and do hereby allege and aver the following:

## I. PRELIMINARY STATEMENT

1.      This matter arises from the extraordinary misconduct of the Montgomery County Detective Bureau, The Pennsylvania State Police and the Montgomery County District Attorneys' Office by and through the actions of their employee or employees Detective Michael Laverty, Trooper Ryan Tierney and Assistant District Attorney Libby Hemler; who caused the wrongful arrest, malicious prosecution, and wrongful detention and imprisonment of Plaintiff Jessica Pugh.

2.      This matter is grounded in civil rights and is brought pursuant to 42 U.S. C. § 1983 that challenges the constitutionality of the actions of the Montgomery County Detective Bureau, Detective Michael Laverty, the Montgomery County District Attorney's Office, Assistant District Attorney Libby Hemler, and Pennsylvania State Trooper, Ryan Tierney, and other entities and officials that resulted in the arrest, detention, and incarceration of Plaintiff, Jessica Pugh.

3.      Plaintiff seeks declaration that the actions of Defendants violated her constitutional rights.  She also seeks redress from all defendants who caused her arrest, malicious prosecution and false imprisonment in the form of nominal, actual, and punitive damages against all Defendants for the flagrant, malicious, willful, wonton and knowing violation of Plaintiff's Fourth and Fourteenth Amendment rights and various State claims as well as costs of this litigation, including reasonable attorneys' fees.

## II. JURISDICATION AND VENUE

4.      This action is instituted under the United States Constitution, particularly under the provisions of the Fourth and Fourteenth Amendments, and under federal law, particularly the Civil Rights Act of 1871 (hereinafter referred to as the "Act"), as amended, 42 U.S. C 1983, 1985 and 1988.

2

5.    This Honorable Court has jurisdiction over this action pursuant to 28 U.S. C. § 1331 and § 1343(a)(3), 1343(a)(4) which confers original jurisdiction on federal district courts in all civil actions arising under the laws and Constitution of the United States.

6.    The court has supplemental jurisdiction over the pendant state-law claims pursuant to 28 U.S. C. § 1367 because these claims arise out of the same events as the federal claims.

7.    Venue is proper in the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391 (b), insofar as the alleged unlawful conduct complained of in this Compliant, which forms the factual and legal basis of the Plaintiffs' claims, arose within the geographical limits of this District in general and within the geographical limits of the County of Montgomery, Pennsylvania, in particular.

## III. IDENTIFICATION OF PLAINTIFF

8.    Jessica Pugh is a 32-year-old adult Muslim African-American Female and citizen of the United States who currently resides at 2668 Deacon Street, Philadelphia, PA., Philadelphia County.

## IV. IDENTIFICATION OF DEFENDANTS

9.    Defendant Montgomery County upon information and belief is a municipality existing in and under the laws and Constitution of the Commonwealth of Pennsylvania.

10.    Defendant Libby Hemler, Assistant District Attorney for the County of Montgomery, was at the time of the instant matter was an assistant district attorney and the prosecuting attorney against Ms. Pugh. ADA Hemler is sued in her official capacity and at all relevant times was employed as an Assistant District Attorney of the Montgomery District Attorney's Office and acted within the scope of her employment and all times relevant hereto was entrusted with the power to prosecute and enforce the laws of the Commonwealth of Pennsylvania

3

and the Ordinances of the County of Montgomery. ADA Hemler was entrusted to protect the Constitutional rights of those she encountered, and at all times relevant hereto, was acting under the authority and color of the law and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions, or acted independently of them.

11. Defendant, Michael Laverty, Detective for the Upper Merion Township Police Department and on loan to the Montgomery County Detective Bureau, is sued in his official capacity and at all relevant times he was employed as a Detective and acted within the scope of his employment and all times relevant hereto was entrusted with the power to prosecute and enforce the laws of the Commonwealth of Pennsylvania and the Ordinances of the County of Montgomery. Detective Laverty was entrusted to protect the Constitutional rights of those he encountered, and at all times relevant hereto, was acting under the authority and color of the law and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions or acted independently of them.

12. Defendant Ryan Tierney is sued in his official capacity as a Trooper of the Pennsylvania State Police and who acted within the scope of his employment and all times relevant hereto was entrusted with the power to prosecute and enforce the laws of the Commonwealth of Pennsylvania and the Ordinances of the State of Pennsylvania. Trooper Tierney was entrusted to protect the Constitutional rights of those he encountered, and at all times relevant hereto, was acting under the authority and color of the law and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions or acted independently of them.

4

## V. PRE DISCOVERY FACTUAL ALLEGATIONS

13.    Paragraphs 1 - 12 of the complaint are incorporated herein by reference, the same as though plead in full.

14.    Plaintiff Jessica Pugh was arrested on or about August 23, 2024, as a conspirator, charging her with Person Not to Possess/Use Firearm, Conspiracy to possess firearm, making a materially false statement, drug trafficking and other related charges.

15. Ms. Pugh is the "Muslim Wife" of the co-defendant Jelani Christmas, who was also charged by Montgomery County.

16. Mr. Christmas was originally indicted as a co-defendant in Montgomery County but ultimately pled guilty to the charges stemming from the Montgomery County investigation in the Eastern District of Pennsylvania and sentenced to a minimum of approximately 16 years of incarceration.

17. Counsel submits that no direct evidence existed against Ms. Pugh regarding any of the allegations of the illegal transfer of firearms or drug trafficking charges.

18. The Commonwealth proceeded on a fabricated and deficient arrest and search warrant pursuant to the charges of the illegal transfer of a firearm.

19. The primary allegations relied on by the Commonwealth to show an illegal transfer of a firearm included (1) an intercepted video call between Jelani Christmas and Paul Parks who was incarcerated at the time, (2) Photographs of Ms. Pugh and Mr. Christmas at a shooting range together, (3) the purchase of the firearm by Ms. Pugh discussed in the video call of Mr. Christmas and Mr. Parks, (4) firearms recovered in the home of Ms. Pugh upon a police search and (5) the subsequent DNA of Mr. Christmas found on the firearm.

20. According to the Commonwealth, during the video call between Mr. Christmas and

5

Mr. Parks, at approximately 27:15 minutes into the call the Commonwealth suggests that Christmas referred to Jessica Pugh, and that he allegedly told Parks that he showed "Jess" a picture of a "Draco" and sent her money, at which point she went and purchased "him" a "Draco".

21. This intercepted video call, discussing a gun in relation to an associate's death and funeral is the impetus to straw purchase charges against Ms. Pugh and used as probable cause to get the warrant to arrest Ms. Pugh and search the home.

22. The Commonwealth wrote in the affidavit of probable cause, that Mr. Christmas, showed "Jess" a picture of a "Draco" yet the conversation made clear that Mr. Christmas says that it was Ms. Pugh that showed him a picture of a Draco that she desired to purchase the firearm for herself and not for Mr. Christmas!

23. In fact, according to the relied upon recording, Ms. Pugh says, "husband I need some money" and he responds, "for what", and according to him, Ms. Pugh shows "him" the picture, and she goes and purchases the Draco Firearm for herself.

24. The Commonwealth however drafts the affidavit, and swears to its contents to get a warrant to arrest Ms. Pugh, by intentionally fabricating what is said during the video call.

25. The Commonwealth employees callously swore to this affidavit regarding the alleged transfer of an illegal firearm where they were either grossly negligent in recounting what they heard, were simply incompetent in the recitation of what they heard or intentionally mislead the court.

26. The Affidavit was signed and sworn to by Detective Michael Laverty of the Montgomery County Detectives Bureau, Trooper Ryan Tierney of the Pennsylvania State Police and then approved at some point by Assistant District Attorney Libby Hemler.

6

27.   It is absolutely appalling and unconscionable that the Commonwealths would draft averments and present to the Court to get an arrest warrant of a citizen when what they drafted is so clearly estranged from any factual basis and devoid of probable cause whatsoever in deprivation of a citizens Constitutional rights.

28. The additional indicia of some wrongdoing by Ms. Pugh included photographs of Ms. Pugh and Mr. Christmas at the shooting range where they appear to purchase ammo and rent firearms.

29. Ms. Pugh was certainly well within her right to rent and shoot at this range and charges of transfer of an illegal firearm had nothing to do with Mr. Christmas being present along with her and renting a firearm for himself and absolutely nothing to do with an argument of probable cause.

30. The only other evidence provided by the Commonwealth was the DNA of Mr. Christmas on two firearms found in the house during the search, yet the Commonwealth was aware that the guns were owned by Ms. Pugh, that they lived together and no direct evidence existed that she ever transferred the firearm to Mr. Christmas.

31. Moreover, what was significant was when the Commonwealth searched the home of Mr. Christmas and Ms. Pugh, the firearms were both found in her bedroom drawer, thus the firearms never left her possession.

32. Ms. Pugh was ultimately arrested and charged with crimes she did not commit and completely absent of probable cause.

33. What is more disturbing is the fact that the Commonwealth relied on fictional probable that they swore to under penalty of perjury in front of the Court knowing all along probable cause was wanting.

34. The Commonwealth, with no other choice, ultimately withdrew the charges due to the

7

fabricated affidavit.

35. Assistant District Attorney Libby Hemler, Trooper Tierney and Detective Laverty either knew or should have known that the affidavit was manufactured and was used to mislead or outright lie to the Court in deprivation of her Constitutional rights.

36. The Commonwealth intentionally relied on the false averments and purposefully omitted this clear discrepancy in applying for the arrest warrant and used this material and necessary lie to secure probable cause. In fact, it was clear and manifest that they knew had they not relied on this false information no warrant would have been issued and Ms. Pugh would never have been arrested.

37. In fact, the Commonwealth Attorney armed with this clear fabrication, disregarded the truth yet stated, "She needed to protect her Officers" in lieu of protecting the Constitution. She instead wrongfully detained Ms. Pugh and went through with this malicious prosecution.

38. The Commonwealth, based on this fabricated affidavit had no probable cause to arrest, restrain, detain and ultimately incarcerate Ms. Pugh. In fact, the affidavit of probable cause was devoid of any fact linking Ms. Pugh to any crime whatsoever. Within the same affidavit, although being charged with more than 34 counts of drug trafficking, the Commonwealth specifically wrote that there did not exist any direct evidence of drug trafficking by Ms. Pugh.

39. Indicting, arresting and detaining this woman with such clear lack of evidence absolutely eviscerated the notion of probable cause, the Fourth Amendment and removed all checks and balances that make up what our system of justice is prior to the decision to remove her afforded liberties.

8

40. On or about March 6, 2026, Ms. Pugh pled Nolo Contendre to an amended count of receipt in commerce under 35-780-113 A 19, for 18 months' probation. This was only due to her incarcerated husband pleading guilty and using her name he put on a vehicle he then used to traffic narcotics. Which in no way absolves the Commonwealth of violating her Constitutional rights.

41. Due to the malicious and illegal civil rights violation, Ms. Pugh was incarcerated and kept from her child for almost a month in Montgomery County prison. In addition to her liberty, she was permanently deprived of her property that was seized.

42. Ms. Pugh, a registered nurse, now continues to suffer from this ordeal, including the emotional state of her child, the loss of her license, earnings, income and from the nightmare thrust upon her by the wrongful acts of the Defendants.

43. Her arrest and imprisonment for a crime she did not commit was the direct result of the defendant detective, assistant district attorney and troopers' lack of due diligence, lack of investigation, the willful and intentional disregard for exculpatory evidence, the lack of training, illegal factual misrepresentation and the callous discriminatory lack of empathy against Ms. Pugh.

44. The defendants' actions in prosecuting Ms. Pugh were reckless, oppressive and with complete disregard to the truth, justice and her Constitutional rights.

45. The defendants' collective actions and inactions caused and continue to cause Ms.

Pugh substantial and significant damage. Through her wrongful arrest, wrongful incarceration and malicious prosecution she has experienced physical pain and suffering, loss of life enjoyment, loss of her nursing license, emotional trauma and the deprivation of her liberty.

46. The unlawful conduct of the defendants outlined above caused Ms. Pugh to be wrongfully arrested, prosecuted and imprisoned for approximately 30 days for a crime she did not commit.

47. As a direct and proximate result of defendants' actions Ms. Pugh sustained ongoing injuries and damages, including loss of her freedom, pain and suffering, mental anguish, emotional distress, indignities, degradation, permanent loss of natural psychological development, and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, vocational opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment and freedom of speech and expression.

48. As a direct and proximate result of defendants' actions and or omissions, Ms. Pugh was deprived of her familial relationships, including time with her minor child and family.

49. As a direct and proximate result of defendants' actions Ms. Pugh sustained economic injuries and damages, including loss of her nursing license, earnings and loss of career opportunities.

## VI.  PRE- DISCOVERY ALLEGATIONS OF LAW
### AGAINST ALL DEFENDANTS INCLUSIVE OF MONELL ALLEGATIONS

50. Paragraphs 1-49 of the complaint are incorporated herein by reference, the same as though pleaded fully herein.

51. It is believed and therefore averred that the Defendant Municipality has a history of Constitutional violations that were known to their supervisors, policy makers and condoned. This history has gone undisciplined and, in essence, the Defendants' past actions were encouraged by their supervisors, leading to the Constitutional violations complained of in this action.

52. In fact, on or about January 2009, the Montgomery County District Attorneys' Office arrested Walter J. Logan Jr., and charged him with criminal offenses only to apologize later for the wrongful arrest and pay Mr. Logan more than one million dollars in damages.

53. Further, in 2019, an-online watchdog group found more than 30 police officers from Montgomery County posted over 130 various offensive and racist social media posts including:

   a. A Pennsylvania State Police trooper posing in blackface for his profile picture.

   b. An Upper Dublin officer claiming, before joining the force, that the Department of Youth and Family Services "would be a much more effective agency if they just shot and killed all the unfit parents."

   c. A Lower Merion officer profanely claiming the Central Park Five were guilty and that "(I) know the truth and don't be intimidated!"

   d. A recently retired Upper Merion officer whose posts included photos equating U.S. Rep. Ilhan Oman wearing a hijab to a baby wearing a diaper on its head, a meme claiming "Due to the rising cost of ammunition, I'm no longer able to provide a warning shot," and disparaged Muslims, African-Americans and Starbucks should they need help from police

   e. An Upper Moreland officer decrying those who support allowing "our government to flood our nation with Muslims."

   f. An Abington officer using an image of Confederate Gen. Robert E. Lee for his Facebook profile shot.

   g. And a Collegeville officer mulling "trading in his Harley (for) a Subaru and getting raped," an insensitive reference, perhaps, to a disadvantageous business deal.

54. Furthermore, no discipline of any kind was imposed upon Defendants, nor any other of the County personnel that may have assisted in this incident.

11

55.    Equally telling is the fact that, of the alleged few investigations supposedly undertaken into misconduct over the last several years, it is believed and therefore averred, that none, were determined to be founded, when some, at least, clearly warranted disciplinary action and or retraining, and no disciplinary action or retraining resulted.

56.    It is believed that no appropriate independent investigation was undertaken, no discipline was issued, and no retraining was ordered by the County Defendants or any supervisor regarding the clear Constitutional violations committed by the Defendant Officers and Prosecutor against Plaintiff.

57.    This lack of appropriate investigation and discipline is a long-standing practice and custom of the County and further evinces that supervisors and decision-makers, were not only deliberately indifferent, but that violations of citizens' Constitutional rights were condoned, if not encouraged, by supervisors and decision makers of the County, and became a custom or de facto policy within its Detective and District Attorney's Office.

58.    Despite repeated incidents and or complaints of unconstitutional acts committed by the Defendants, no significant efforts were made to establish or ensure that actual proper standards were adhered to within the Detective Bureau or Montgomery County District Attorney's Office, and no efforts were made to ensure citizens' Constitutional rights were not violated.

59.    This custom and de facto policy supported an ongoing culture within the County which not only condones, but encourages, the sort of Constitutional violations which occurred here, with each Defendant knowing that his conduct would go unpunished and undeterred.

60.    At all times relevant hereto, the legal principles regarding the rights of persons, such as the Plaintiff, to be free from unlawful seizure, and to be accorded the due process of law, as well as the contours of those constitutional and statutory rights, were well established, and it was not

reasonable for the Defendants to believe that their actions would not deprive the Plaintiff of those rights.

61.     The actions of the Defendants violated the clearly established and well settled federal Constitutional rights of the Plaintiffs as more clearly set forth in the Counts below.

62.     The Defendants acting through its policy makers, routinely ignored citizens' complaints of detectives and prosecutors, violations of citizens' Constitutional rights, and/or ignored their duty to question review and monitor such things. In effect, it was communicated to the Department, and the public, that any attempt to reform the Defendant County would be ineffectual and that the custom and practice of inflicting Constitutional abuses by members of the Detective Bureau and District Attorney's Office would remain intact, thanks to the inaction and deliberate indifference of their supervisors and policymakers.

63.     The County Defendants' citizen complaint protocol intentionally and systematically, cleansed and under-reported police and prosecutorial abuse complaints by the citizenry, even as it institutionally deterred them from being made, and even as it ignored them when made.

64.     In effect, the defendants acting through its policy-makers and supervisors, have institutionalized a policy to cover-up police and prosecutorial wrongdoing, or at the very least turn a blind eye to the wrongdoing and any issue as to whether it occurred, sending a message to both the Department and the public at large, that Constitutional violations will not only go unpunished but will be tolerated, if not encouraged by the County administration.

65.     The supervisors, and decision-makers within the County Departments, could not properly access, monitor, assess and correct the culture and custom of the abuse of process because the information necessary to do so was not readily available to them; and, they did nothing to make it readily available in a system which ignored the difficulty required to retrieve that essential information, and on a system which failed to establish reasonable accountability.

13

66.     This constitutes deliberate indifference per se and a complete abdication of supervisory and decision-making responsibility.

67.     County decision makers and supervisors, failed to adopt and enforce reasonable and necessary policies and procedures to end the culture of abuse and of deliberate indifference to the rights and safety of citizens that had become the long-standing hallmark of the County. The said Defendants, continued to encourage this custom and proactive of deliberate indifference to the Constitutional rights of others by ignoring and even rewarding inappropriate actions; by failing to promulgate appropriate rules, regulations and policies; by failing to enforce existing rules and regulations; by failing to discipline; by inappropriate hiring, training, supervision and promotional practices; and by reinforcing the old culture of deliberate indifference.

68.     At all times during the events described above, the Defendant County, Officers and Assistant Prosecutor were engaged in a joint venture. These individual Defendants assisted each other in performing the various actions described and lent their support and the authority of their office to each other during the said events.

69.     The unlawful actions of Defendants, as alleged herein, were taken or ratified by final policy makers for the State Police; Montgomery County Administrators; Commonwealth of Pennsylvania and thus constitute policies, practices, customs, and usages sufficient to impose municipal liability.

70.     As a direct and proximate result of the said acts or omissions of the Defendants, made possible by and compounded by the stated actions or inactions of the other Defendants, the Plaintiff suffered, inter alia, one or more of the following injuries and damages:

i.       mental pain and suffering, in both past and the predictable future, including discomfort, loss of use of bodily function, ill health, loss of sleep, and other emotional injuries including stigma, defamation, humiliation, distress, fright, PTSD and other emotion trauma;

ii.      medical and psychological expenses, past and further;

iii.     loss of life's pleasures;

iv.      loss of income and or shortening of economic horizons;

v.       loss of personal property;

vi.      general damages for violation of Plaintiffs' Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article 1, Section 1 and Section 8 of the Pennsylvania Constitution; and

vii.     punitive damages (except as to the County and the Defendants in their official capacities), which are justified factually as alleged herein, and legally, because the Defendants acted maliciously and/or wantonly in violating the Plaintiffs' Constitutionally protected rights, and intentionally, recklessly and willfully engaged in reprehensible and outrageous conduct not to be tolerated in a civilized society.

71.     Plaintiffs further seek counsel fees and costs as authorized by statute.

72.     The actions of the Defendants violated the clearly established and well settled federal Constitutional rights of Plaintiff, and it would be unreasonable for any Defendant to believe that they were not violating such rights as more clearly set forth in the Counts below.

73.     Plaintiff believes and thus aver, that without the intervention of this Honorable Court, Plaintiff in particular, as well as others, are likely to suffer damages from similar Constitutional violations in the future, requiring injunctive relief.

74.     The Defendants, individually and collectively, at all times pertinent to the claims asserted herein, acted under color of state law.

15

75.    While acting under color of state law, the Defendants deprived Plaintiffs of various state and federal Constitutional rights as more fully set forth herein.

### VII. Count I
### PLAINTIFF V. Defendant Officers
### 42 U.S.C. 1983 (Unlawful Seizure/False Arrest)

76.    Paragraphs 1-75 of the complaint are incorporated herein by reference, the same as though pleaded fully herein.

77.    The conduct of Defendant Officers, acting under color of law, unlawfully arresting, restraining, handcuffing, transporting, and incarcerating the Plaintiff constituted a seizure for purposes of the Fourth Amendment to the United States Constitution, in that she experienced, inter alia, an unreasonable deprivation of her freedom of movement.

78.    Said arrest and seizure was unreasonable and without probable cause in that the facts and circumstances available to the Defendants would not warrant prudent officers in believing that the Plaintiff had committed a crime, which would justify her arrest and seizure.

79.    The Plaintiff was subjected to unlawful seizure and arrest in violation of the Fourth Amendment of the United States Constitution.

80.    As a result of the unlawful seizures and false arrests affected upon the Plaintiff, the Plaintiff suffered damage as stated herein.

81.    The individual Defendants are personally liable for their direct involvement in the commission of the acts complained of herein.

16

82.    The County of Montgomery and police supervisors are liable for the acts of their Defendants pursuant to the claims and theories expressly set forth hereinafter, and which are incorporated by reference as if set forth et extenso here.

83.    Defendants' actions in arresting, restraining, handcuffing, transporting, and seizing Plaintiff were unreasonable in light of the surrounding circumstances.

84.    The likelihood is that, but for the alleged acts and omissions committed by the County, its decision and policy makers and supervisors, the injuries inflicted upon the Plaintiff would not have occurred.

85.    Defendants' did in fact arrest, restrain, handcuff, transport, and seize Plaintiff without probable cause in violation of the Pennsylvania and United States Constitution.

86.    As a direct and proximate result of the conduct of the defendants as aforesaid, which shocks the conscience, Plaintiff was caused to suffer severe emotional, psychological, economic and physical damages and losses.

87.    As a direct and proximate result of the conduct of the defendants as aforesaid, which shocks the conscience, Plaintiff was caused to suffer those injuries, damages and losses described in the preceding paragraphs, each of which is incorporated herein by reference.

WHEREFORE, plaintiff respectfully requests this Honorable Court enter judgment in the favor of Plaintiff and against defendants in an amount in excess of $150,000.00, together with an award of costs and fees as permitted by law, and an award of punitive damages.

17

## VIII.   Count II
## 42 U.S.C. 1983
### False Imprisonment and/or Detention
### Against Defendant Officers

88. Paragraphs 1-87 of the complaint are incorporated herein by reference, the same as though pleaded fully herein.

89. Defendant Officers, acting under color of law, either individually or acting in concert, subjected the Plaintiff to false imprisonment in violation of her Constitutionally protected Fourth Amendment rights.

90. The Defendants deliberately and intentionally arrested, and or intentionally detained, the Plaintiff in custody, or unlawfully confined her.

91. Said detention was unlawful because they lacked probable cause.

92. The facts and circumstances, which were within the knowledge of the Defendants at the time of Plaintiffs' arrest, were not sufficient to warrant a man of reasonable caution to believe that the Plaintiff had committed or was committing a crime for which an arrest and imprisonment was authorized under the law.

93. As a result of being subjected to False Imprisonment, in violation of her Constitutionally protected rights under the Fourth Amendment, Plaintiff suffered the damages alleged herein.

94. The County of Montgomery, the Montgomery County Detective Bureau, District Attorney's Office, PA State Police, and its supervisors are liable for the acts of Defendants pursuant to the claims and theories expressly set forth hereinafter, and which are incorporated by reference as if set forth et extenso here.

95. Further, the conduct exhibited by subordinate Defendants, which occurred at the time of this incident and thereafter, were not unexpected. Neither were the deeds of independent,

18

non-supervisory actors. But rather, they constituted predictable behavior of subordinates who operated with perceived impunity due to the deliberate indifference of their supervisors and policymakers, and the joint policies, practices and customs, of the County of Montgomery, the State Police, the Montgomery Detective Bureau and Montgomery County District Attorney's Office, all of whom operated as the moving force behind what the Defendant Officers and or subordinates believed to be their unaccountable efforts to engage in what had become, all too customary, Constitutional deprivations within the County.

WHEREFORE, plaintiff respectfully requests this Honorable Court enter judgment in the favor of Plaintiff and against defendants in an amount in excess of $150,000.00, together with an award of costs and fees as permitted by law, and an award of punitive damages.

### IX.    Count III
### 42 U.S. C. § 1983
### (Malicious Prosecution)
### PLAINTIFF V. ALL DEFENDANTS

96.    Paragraphs 1-95 of the complaint are incorporated herein by reference, the same as though pleaded fully herein.

97.    Defendants' initiated a criminal proceeding without probable cause in violation of the Fourth Amendment to the United States Constitution.

98.    Defendants' actions in initiating a proceeding, arresting, restraining, handcuffing, transporting, and incarcerating Plaintiff for approximately 30 days, were a deprivation of her liberty consistent with a seizure in violation of the Fourth Amendment to the United States Constitution.

99.    Defendants' did in fact initiate a proceeding, arrest, restrain, handcuff, transport, and incarcerate Plaintiff without probable cause and with malice in violation of the Fourth Amendment rights to the United States Constitution.

19

100.    As a direct and proximate result of the conduct of the defendants as aforesaid, which shocks the conscience, Plaintiff was caused to suffer severe emotional, psychological and physical damages and losses.

101.    As a direct and proximate result of the conduct of the defendants as aforesaid, which shocks the conscience, Plaintiffs were caused to suffer those injuries, damages and losses described in the preceding paragraphs, each of which is incorporated herein by reference.

WHEREFORE, plaintiff respectfully requests this Honorable Court enter judgment in the favor of Plaintiff's and against defendants in an amount in excess of $150,000.00, together with an award of costs and fees as permitted by law, and an award of punitive damages.

## X.    Count IV.
### PLAINTIFF V. ALL DEFENDANTS
### 42 U.S.C. 1983 (Unreasonable Seizure)

102.    Paragraphs 1-101 of the complaint are incorporated herein by reference, the same as though pleaded fully herein.

103.    Defendants' actions in arresting, restraining, handcuffing, transporting, and incarcerating Plaintiff constituted unreasonable and malicious seizures for purposes of the Fourth and Fourteenth Amendments to the United States Constitution.

104.    Defendants' actions in arresting, restraining, handcuffing, transporting, and incarcerating Plaintiff were unreasonable and malicious in light of the surrounding circumstances.

105.    Defendants' did in fact arrest, restrain, handcuff, transport, and incarcerate Plaintiff without probable cause in violation of the United States Constitution.

106.    As a direct and proximate result of the conduct of the defendants as aforesaid, which shocks the conscience, Plaintiff was caused to suffer severe emotional, psychological and physical damages and losses.

107. As a direct and proximate result of the conduct of the defendants as aforesaid, which shocks the conscience, Plaintiffs were caused to suffer those injuries, damages and losses described in the preceding paragraphs, each of which is incorporated herein by reference.

WHEREFORE, plaintiff respectfully requests this Honorable Court enter judgment in the favor of Plaintiffs and against defendants in an amount in excess of $150,000.00, together with an award of costs and fees as permitted by law, and an award of punitive damages.

### XI.  Count V
### 42 U.S.C. 1983
### Abuse of Process- 14th Amendment
### Against Defendant Officers and Assistant District Attorney

108. Paragraphs 1-107 of the complaint are incorporated herein by reference, the same as though pleaded fully herein.

109. Defendants Affidavit of Probable Cause (Affidavit) in support of the Application for a Search Warrant and for the arrest of Plaintiff contains numerous false or misleading allegations which Officers made knowingly and deliberately or with a reckless disregard for the truth, and or material omissions of fact, which any reasonable person would know that a judge would want to know in making a probable cause determination as to whether he should issue the subject arrest warrant.

110. The intentional and material omissions made by Detective Laverty in the Affidavit were each calculated to improperly secure the Magistrate's approval of the subject arrest warrant by withholding information that any reasonable person would know is the kind of thing that a judge would wish to know before issuing such a warrant.

21

111. Defendant Libby Hemler approved the warrant knowing all the facts and knew or should have known that they lacked probable cause to arrest Plaintiff.

112. The Defendants lacked legitimate probable cause to arrest Plaintiff.

113. Defendants maliciously procured an arrest warrant based upon false or misleading information targeting Plaintiff with a reckless regard for the truth and Defendants knew or should have known, probable cause was wanting.

114. It is therefore clear that the purpose of securing the arrest warrant upon false or misleading allegations was aimed at an objective that was not legitimate in the use of the process, to wit, sought to arrest an innocent African-American Muslim Female for a crime she did not commit.

115. The process of securing the arrest warrant, even if obtained, constituted an abuse of process because it was used for the purpose of malicious prosecution, wrongful arrest and unlawful seizure, purposes other than that for which it was designed to accomplish.

**WHEREFORE,** Plaintiff respectfully request that this Honorable Court award judgment in Plaintiffs' favor and against Defendant Naber and Frame, in an amount in excess of One Hundred Fifty Thousand Dollard ($150,000) together with punitive damages in their individual capacity and, such other relief which the Court may find appropriate.

22

## XII.    COUNT VI
### PLAINTIFF V. ALL DEFENDANTS
### OTHER THAN IN OFFICIAL CAPACITY
### Supplemental State Claim
### (Battery)

116.    Paragraphs 1-115 of the complaint are incorporated herein by reference, the same as though pleaded fully herein.

117.    Defendants' ordered, consented, and or agreed to the physical restraining and handcuffing of Plaintiff without Plaintiffs' consent and without probable cause.  Such restraining and handcuffing constituted harmful and offensive bodily contact.

118.    As a direct and proximate result of the conduct of the defendants as aforesaid, which shocks the conscience, Plaintiff was caused to suffer severe emotional, psychological and physical damages and losses.

119.    As a direct and proximate result of the conduct of the defendants as aforesaid, which shocks the conscience, Plaintiff was caused to suffer those injuries, damages and losses described in the preceding paragraphs, each of which is incorporated herein by reference.

WHEREFORE, plaintiff respectfully requests this Honorable Court enter judgment in the favor of Plaintiff and against defendants in an amount in excess of $150,000.00, together with an award of costs and fees as permitted by law, and an award of punitive damages.

## XIII. Count VII
### PLAINTIFF V. ALL DEFENDANTS
### OTHER THAN IN OFFICIAL CAPACITY
### Supplemental State Claim
### (False Imprisonment)

120.    Paragraphs 1-119 of the complaint are incorporated herein by reference, the same as though pleaded fully herein.

23

121. Defendants' ordered, consented, and or agreed to the arrest, physical restraint, handcuffing, transporting to jail, and incarceration. of Plaintiff without Plaintiffs' consent.

122. Defendants' actions in confining Plaintiff was unlawful.

123. As a direct and proximate result of the conduct of the defendants as aforesaid, which shocks the conscience, Plaintiff was caused to suffer severe emotional, psychological and physical damages and losses.

124. As a direct and proximate result of the conduct of the defendants as aforesaid, which shocks the conscience, Plaintiff was caused to suffer those injuries, damages and losses described in the preceding paragraphs, each of which is incorporated herein by reference.

WHEREFORE, plaintiff respectfully requests this Honorable Court enter judgment in the favor of Plaintiff and against defendants in an amount in excess of $150,000.00, together with an award of costs and fees as permitted by law, and an award of punitive damages.

### XIV. Count VIII
### PLAINTIFF V. ALL DEFENDANTS
### OTHER THAN IN OFFICIAL CAPACITY
### Supplemental State Claim
### (Intentional Infliction of Emotional Distress)

125. Paragraphs 1-124 of the complaint are incorporated herein by reference, the same as though pleaded fully herein.

24

126.    Defendants' intentionally and or recklessly ordered, consented, and or agreed to the arrest, physically restrain, handcuff, transport to jail, and incarcerate Plaintiff without Plaintiffs' consent.

127.    Defendants' actions in confining Plaintiff was unlawful and outrageous.

128.    As a direct and proximate result of the conduct of the defendants as aforesaid, which shocks the conscience, Plaintiff was caused to suffer severe emotional, psychological and physical damages and losses.

129.    As a direct and proximate result of the conduct of the defendants as aforesaid, which shocks the conscience, Plaintiff was caused to suffer those injuries, damages and losses described in the preceding paragraphs, each of which is incorporated herein by reference.

WHEREFORE, plaintiff respectfully requests this Honorable Court enter judgment in the favor of Plaintiff and against defendants in an amount in excess of $150,000.00, together with an award of costs and fees as permitted by law, and an award of punitive damages.

## XVI.    Count IX
### 42 U.S.C. 1983
### Punitive Damages
### Plaintiff v. All Defendants

130.    Paragraphs 1-129 of the complaint are incorporated herein by reference, the same as though pleaded fully herein.

131.    The malicious and intentionally reprehensible acts of Defendants fabricating the affidavit to arrest and prosecute an African American Muslim mother shocks the conscious.

25

132.    The Defendants act of fabricating probable cause and intentionally restraining Plaintiff in jail for 30 days with conscious disregard for her safety shocks the conscious.

133.    The Defendants callous indifference to the Constitutional rights of the Plaintiff will continue without being subject to Punitive Damages.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award judgment in the favor of Plaintiff and against municipal defendants in an amount in excess of $250,000.00, together with an award of costs and fees as permitted by law, and an award of punitive damages.

## XIX.  PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests this Honorable Court enter judgment in the favor of Plaintiff's and against defendants in an amount in excess of $150,000.00, together with an award of costs and fees as permitted by law, and an award of punitive damages.

Respectfully submitted

FOR THE PLAINTIFF,

_____
Michael A. Walker, Esquire
Identification No. 94774
The Walker Firm
516 Dekalb Street
Norristown, PA 19401
MAW@iwalkcm.com
610.279.3769

26

## VERIFICATION

I hereby affirm that the following facts are correct:

I am the Plaintiff Jessica Pugh in the foregoing action and the attached Complaint are based upon information which I have furnished to my counsel and information which has been gathered by counsel. The language of the Complaint are that of counsel and not of me. I have read the Complaint and to the extent that the language is based upon information which I have given to my counsel, it is true and correct to the best of my knowledge, information and belief. To the extent that the content of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I hereby acknowledge that the fact set forth in the aforesaid Complaint are made subject to the penalties of 18 Pa.C.S. 4904 relating to unsworn falsification to authorities.

_Jessica Pugh_
Jessica Pugh, Plaintiff

_7/14/2026_
Date

41